1
2
3
4
5
6
7

8

**UNITED STATES DISTRICT COURT**

9

**CENTRAL DISTRICT OF CALIFORNIA**

10

**WESTERN DIVISION**

11

12   ADELA YNZUNZA, as heir and          )   No. CV 14-1198-PLA
     representative of THE ESTATE OF BILL )
13   YNZUNZA,                            )
                                         )
14                    Plaintiff,         )   **MEMORANDUM OPINION AND ORDER**
                                         )
15              v.                       )
                                         )
16   CAROLYN W. COLVIN,                  )
     ACTING COMMISSIONER OF SOCIAL       )
17   SECURITY ADMINISTRATION,            )
                                         )
18                    Defendant.         )
                                         )
19   ────────────────────────────────────)

20                                  **I.**

21                            **PROCEEDINGS**

22          Plaintiff[1] filed this action on February 14, 2014, seeking review of the Commissioner's denial

23   of his application for Disability Insurance Benefits.  The parties filed Consents to proceed before

24   the undersigned Magistrate Judge on March 21, 2014, March 25, 2014, and April 11, 2014.

25   Pursuant to the Court's Order, the parties filed a Joint Stipulation ("JS") on October 31, 2014, that

26

27   ─────────────────────

28          [1]   "Plaintiff" as used herein refers to the applicant for benefits under consideration in this
     action, Bill Ynzunza.

1    addresses their positions concerning the disputed issues in the case.  The Court has taken the

2    Joint Stipulation under submission without oral argument.

3

4                                                    **II.**

5                                            **<u>BACKGROUND</u>**

6            Plaintiff was born on April 13, 1943.  [Administrative Record ("AR") at 63.]  He has past

7    relevant work experience as a pre-press stripper.  [AR at 88.]

8            On December 4, 2001, plaintiff filed an application for Disability Insurance Benefits.  [AR

9    at 20, 63-65.]  In his application, plaintiff alleged disability beginning on December 29, 2000.  [<u>Id.</u>]

10   After his application was denied initially and upon reconsideration, plaintiff filed a request for a

11   hearing before an Administrative Law Judge ("ALJ").  [AR at 39-54.]  A hearing was held on March

12   1, 2004, at which time plaintiff appeared with counsel and testified on his own behalf.  [AR at 421-

13   53.]  A vocational expert ("VE") also testified.  [AR at 428-33, 451.]  On September 24, 2004, the

14   ALJ issued a decision ("2004 Decision") concluding that plaintiff was not under a disability, and

15   thus not entitled to benefits by virtue of his December 4, 2001, application.  [AR at 20-34.]  On July

16   11, 2005, plaintiff filed a subsequent application for benefits.  It was determined that he was

17   disabled as of September 25, 2004.  [AR at 496-99.]  Plaintiff also requested review of the 2004

18   Decision, which was denied by the Appeals Council on July 12, 2007.  [AR at 11-14.]

19           On November 6, 2007, plaintiff filed a complaint in this Court in Case Number CV 07-7166-

20   PLA.    [AR at 478.]    On August 17, 2010, the Court reversed the 2004 Decision of the

21   Commissioner and remanded the case for further administrative proceedings ("2010 Order").  [AR

22   at 478-93.]  On November 3, 2010, in accordance with the Court's Order, the Appeals Council

23   vacated the Commissioner's final decision and remanded the matter for further proceedings

24   consistent with the 2010 Order on the issue of disability for the period prior to September 25,

25   2004.  [AR at 496-99.]

26           On February 28, 2012, a hearing was held before the same ALJ, at which a medical expert

27   and a vocational expert testified.  [AR at 985-1038.]  On April 18, 2012, the ALJ issued an

28   unfavorable decision ("2012 Decision").  [AR at 462-72.]  This action followed.

### III.

### **STANDARD OF REVIEW**

Pursuant to 42 U.S.C. § 405(g), this Court has authority to review the Commissioner's decision to deny benefits.  The decision will be disturbed only if it is not supported by substantial evidence or if it is based upon the application of improper legal standards.  Berry v. Astrue, 622 F.3d 1228, 1231 (9th Cir. 2010).

"Substantial evidence means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1159 (9th Cir. 2008) (internal quotation marks and citation omitted); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998) (same). When determining whether substantial evidence exists to support the Commissioner's decision, the Court examines the administrative record as a whole, considering adverse as well as supporting evidence.  Mayes v. Massanari, 276 F.3d 453, 459 (9th Cir. 2001); see Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) ("[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence.") (internal quotation marks and citation omitted).  "Where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld." Ryan, 528 F.3d at 1198 (internal quotation marks and citation omitted); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, [the reviewing court] may not substitute [its] judgment for that of the ALJ.").

### IV.

### **THE EVALUATION OF DISABILITY**

Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment that is expected to result in death or which has lasted or is expected to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d)(1)(A); Drouin v. Sullivan, 966 F.2d 1255, 1257 (9th Cir. 1992).

## A.    THE FIVE-STEP EVALUATION PROCESS

The Commissioner (or ALJ) follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920; Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995), as amended April 9, 1996.  In the first step, the Commissioner must determine whether the claimant is currently engaged in substantial gainful activity; if so, the claimant is not disabled and the claim is denied.  Id.  If the claimant is not currently engaged in substantial gainful activity, the second step requires the Commissioner to determine whether the claimant has a "severe" impairment or combination of impairments significantly limiting his ability to do basic work activities; if not, a finding of nondisability is made and the claim is denied.  Id. If the claimant has a "severe" impairment or combination of impairments, the third step requires the Commissioner to determine whether the impairment or combination of impairments meets or equals an impairment in the Listing of Impairments ("Listing") set forth at 20 C.F.R., pt. 404, subpt. P, app. 1; if so, disability is conclusively presumed and benefits are awarded.  Id.  If the claimant's impairment or combination of impairments does not meet or equal an impairment in the Listing, the fourth step requires the Commissioner to determine whether the claimant has sufficient "residual functional capacity" to perform his past work; if so, the claimant is not disabled and the claim is denied.  Id.  The claimant has the burden of proving that he is unable to perform past relevant work.  Drouin, 966 F.2d at 1257.  If the claimant meets this burden, a prima facie case of disability is established.  The Commissioner then bears the burden of establishing that the claimant is not disabled, because he can perform other substantial gainful work available in the national economy.  The determination of this issue comprises the fifth and final step in the sequential analysis.  20 C.F.R. §§ 404.1520, 416.920; Lester, 81 F.3d at 828 n.5; Drouin, 966 F.2d at 1257.

**B.    THE ALJ'S APPLICATION OF THE FIVE-STEP PROCESS**

In this case, at step one, the ALJ found that plaintiff had not engaged in substantial gainful activity since his alleged onset date of December 29, 2000.[2]  [AR at 465.]  At step two, the ALJ concluded that during the period under consideration from December 29, 2000, to September 25, 2004, plaintiff had the following severe impairments:  diabetes mellitus with peripheral neuropathy and retinopathy, congestive heart failure, cataracts bilaterally, hypothyroidism, hypertension, renal insufficiency benign prostatic hypertrophy, obesity, an umbilical hernia, and a depressive disorder, not otherwise specified.  [AR at 465-66.]  At step three, the ALJ determined that plaintiff did not have an impairment or a combination of impairments that met or medically equaled any of the impairments in the Listings.[3]  [AR at 466.]  The ALJ further found that prior to July 1, 2003, plaintiff retained the residual functional capacity ("RFC")[4] to perform the full range of light work as defined in 20 C.F.R. § 404.1567(b)[5] except that he had to avoid exposure to unprotected heights and dangerous machinery.  He had no work-related mental limitations.  [AR at 467-68.]  The ALJ also determined that after July 1, 2003, plaintiff retained the RFC to lift and carry 20 pounds occasionally and 10 pounds frequently, but he could work for no more than six hours a day.  Plaintiff "continue[d] to have no work-related mental limitations."  [AR at 470.]  At step four, the ALJ determined that from December 29, 2000, through June 30, 2003, plaintiff could preform his past relevant work as a Photo Engraving Printer.  [AR at 471.]  At step five, the ALJ noted that plaintiff

---

[2]    The ALJ concluded that plaintiff met the insured status requirements of the Social Security Act through March 31, 2006.  [AR at 465.]

[3]    See 20 C.F.R. pt. 404, subpt. P, app. 1.

[4]    RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See Cooper v. Sullivan, 880 F.2d 1152, 1155 n.5 (9th Cir. 1989).  "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity."  Massachi v. Astrue, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

[5]    The ALJ incorrectly cited to subsection "c" of 20 C.F.R. § 404.1567 as involving "light work."  [AR at 467.]  Rather, 20 C.F.R. § 404.1567 subsection "b" defines "light work" as work involving "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds" and requiring "a good deal of walking or standing" or "sitting most of the time with some pushing and pulling of arm or leg controls."

was 60 years old and closely approaching retirement age, that plaintiff had a limited education, and that plaintiff's skills do not transfer to jobs that exist in significant numbers in the local or national economy.  [AR at 472.]  Accordingly, the ALJ determined that beginning July 1, 2003, considering plaintiff's age, education, work experience, and RFC, there were no jobs that exist in significant numbers in the national economy that plaintiff could perform.[6]  [Id.] The ALJ thus concluded that plaintiff was not disabled prior to July 1, 2003, but became disabled on that date and continued to be disabled through the date of the decision.  [Id.]

## V.

## THE ALJ'S DECISION

Plaintiff contends that the ALJ:  (1) failed to properly consider the evidence of his mental impairment; and (2) failed to properly consider the onset date of his disability.  [JS at 5.]  As set forth below, the Court respectfully disagrees with plaintiff and affirms the decision of the ALJ.

### A.    THE ALJ FAILED TO PROPERLY CONSIDER EXAMINING PHYSICIAN OPINION

Plaintiff contends that the ALJ failed to properly consider the opinion of Dr. Ernest Bagner. [JS at 6-9.] Specifically, he contends that the ALJ failed to properly consider the combined effects of plaintiff's depression with limitations on his concentration, attention, and memory, and that the ALJ did not state specific and legitimate reasons for rejecting Dr. Bagner's findings.  [Id.]

Dr. Bagner, in his September 11, 2002, report, opined that plaintiff had "mild limitations handling the normal stresses at work, maintaining concentration and attention, completing complex tasks, and completing a normal work week." [AR at 287.] Dr. Bagner also indicated that plaintiff was able to do serial threes (subtracting three from one hundred serially) but that he only "attempted" to perform serial sevens.  [Id.]  Dr. Bagner diagnosed plaintiff with a depressive disorder not otherwise specified, mild to moderate psychosocial stressors, and assigned him a

---

[6]    The ALJ further found that beginning July 1, 2003, even if plaintiff had the RFC to perform the full range of light work, considering his age, education, and work experience, a finding of "disabled" is directed by Medical-Vocational Rule 202.02.  [AR at 472.]

global assessment of functioning ("GAF") score of 70[7], indicating a mild degree of dysfunction. [Id.]

### 1.    The 2004 Decision

In its 2010 Order, the Court found that the reasons given by the ALJ in the 2004 Decision for rejecting the very same opinion of Dr. Bagner at issue here were not clear and convincing, and remanded the matter for further consideration of Dr. Bagner's opinion.  [AR at 491.]  The ALJ in 2004 had not included Dr. Bagner's assessment of plaintiff's mental limitations in the RFC determination, or considered Dr. Bagner's findings at step four.  [See id.; AR at 20-34.]  Because the ALJ concluded that plaintiff had limitations with his attention and concentration, and Dr. Bagner's opinion -- which had not been properly rejected -- indicated that plaintiff had limitations with complex task performance, it appeared that there was a conflict between plaintiff's limitations and the Dictionary of Occupational Titles' ("DOT") description of plaintiff's past relevant work, which appeared to require a high degree of concentration, attention, and complex skill performance.[8]  [AR at 492.]  Because the ALJ in his 2004 Decision did not address the apparent deviation, the Court remanded the matter for further proceedings.  [AR at 492-93.]

---

[7]    A GAF score is the clinician's judgment of the individual's overall level of functioning.  It is rated with respect only to psychological, social, and occupational functioning, without regard to impairments in functioning due to physical or environmental limitations.  See American Psychiatric Association, Diagnostic and Statistical Manual of Mental Disorders ("DSM-IV") at 32 (4th Ed. 2000).  A GAF score in the range of 61 to 70 indicates "[s]ome mild symptoms, (e.g., depressed mood and mild insomnia), OR some difficulty in social, occupational, or school functioning (e.g., occasional truancy, or theft within the household), but generally functioning pretty well, has some meaningful interpersonal relationships."  DSM-IV at 34.

[8]    The DOT raises a presumption as to job classification requirements.  See Johnson v. Shalala, 60 F.3d 1428, 1435 (9th Cir. 1995); see also Pinto v. Massanari, 249 F.3d 840, 845-46 (9th Cir. 2001) ("[T]he best source for how a job is generally performed is usually the [DOT]") (internal citations omitted).  In order for "the ALJ to rely on a job description in the [DOT] that fails to comport with a claimant's noted limitations, the ALJ must definitively explain this deviation" and "the record must contain persuasive evidence to support [it]."  Pinto, 249 F.3d at 846-47 (internal quotations and citation omitted).

### 2.      The 2012 Decision

In the 2012 Decision, the ALJ stated the following with respect to Dr. Bagner's September 11, 2002, report:

> I do not accept Dr. Bagner's opinion that [plaintiff] has mild limitations with concentration and attention.  Dr. Bagner administered a mental status examination and noted that [plaintiff] was of average intelligence, had normal reality contact, registered three of three objects after five minutes, performed serial threes and "attempted" serial sevens.   Otherwise, the only evidence related to attention/concentration was [plaintiff's] allegation that he has difficulty with these factors.  As discussed, the assessment of most mental impairments is made based on an individual's self-reported symptoms and the abilities he chooses to demonstrate.  Because [plaintiff] is not credible, [Dr. Bagner]'s assessment is compromised.

[AR at 470 (internal citations omitted).]

Dr. Bagner's report was based on information provided by plaintiff.  [AR at 285.]  As previously discussed in the Court's 2010 Order, the ALJ properly discounted plaintiff's credibility.  [AR at 484.]  There, the Court noted that "[a] physician's opinion . . . premised to a large extent upon [plaintiff]'s own accounts of his symptoms and limitations may be disregarded where those complaints have been properly discounted."  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (internal quotations marks and citation omitted).  Because the ALJ properly discounted plaintiff's credibility in 2010, the ALJ also properly discounted Dr. Bagner's conclusions here that were based on plaintiff's own statements and those abilities that plaintiff chose to demonstrate.  See Bayliss v. Barnhart, 427 F.3d 1211, 1217 (9th Cir. 2005) (upholding the rejection of psychological assessment where that assessment was not supported by clinical evidence and was based on plaintiff's subjective complaints and information provided by plaintiff).  Therefore, the ALJ provided a clear and convincing reason to reject the opinion of Dr. Bagner regarding plaintiff's mental limitations.  Accordingly, remand is not warranted on this issue.[9]

---

[9]    To the extent plaintiff argues that the ALJ also did not properly consider Dr. De Beixedon's opinions (see JS, at 8-9), the Court affirmed the rejection of those opinions in the 2010 Order as being both unsupported by the medical evidence and inconsistent with Dr. de Beixedon's own treatment notes.  [AR at 487-88; 2010 Order, at 10-12.]

**B.      DETERMINATION OF DISABILITY ONSET DATE**

Plaintiff contends that the ALJ erred in the determination of plaintiff's disability onset date. [JS at 15-19.]

In the 2004 decision, the ALJ concluded that plaintiff was not disabled at any time from the date of his application on December 4, 2001, through the date of the ALJ's decision on September 24, 2004. [AR at 34.] Thereafter, plaintiff filed a subsequent application for disability; it was then determined that he became disabled on September 25, 2004. [AR at 496.] On remand, the Appeals Council instructed the ALJ to obtain evidence from a medical expert to clarify the nature and severity of plaintiff's renal insufficiency and whether an earlier onset date was warranted. [AR at 498.]

During the hearing on February 28, 2012, Dr. Joselyn E. Bailey, who is trained in kidney disease, testified as a medical expert. [AR at 989.] Dr. Bailey analyzed plaintiff's medical records and testified that, "as far as 2001 goes, there is nothing to say that [plaintiff] was incapable of doing [sic]." [AR at 1002.] She further testified that in 2002, given plaintiff's peripheral neuropathy, his standing and walking were limited to six hours in an eight hour workday. [AR at 1014.] Finally, she opined that beginning on July 25, 2003, plaintiff's capacity for work was limited to six hours in an eight hour workday. [Id.; see also AR at 469-70.] While Dr. Bailey testified that plaintiff could perform at a medium exertional level, the ALJ concluded that plaintiff could perform at a light exertional level and that plaintiff retained that RFC until June 30, 2003. Because plaintiff's past relevant work was light, the ALJ determined that plaintiff could perform his past relevant work until June 30, 2003, but not after that date, based on the testimony of Dr. Bailey. [AR at 469-72.]

In evaluating medical opinions, the case law and regulations distinguish among the opinions of three types of physicians:  (1) those who treat plaintiff (treating physicians); (2) those who examine but do not treat plaintiff (examining physicians); and (3) those who neither examine nor treat plaintiff (non-examining physicians). See 20 C.F.R. §§ 404.1502, 404.1527; see also Lester v. Charter, 81 F.3d 821, 830 (9th Cir. 1995). Generally, the opinion of a nonexamining medical advisor cannot by itself constitute substantial evidence that justifies the rejection of the opinion of

an examining or treating physician.  Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 602 (9th Cir. 1999) (citing Pitzer v. Sullivan, 908 F.2d 502, 506 n. 4 (9th Cir. 1990); Gallant v. Heckler, 753 F.2d 1450, 1456 (9th Cir. 1984)).  But the Ninth Circuit has consistently upheld the Commissioner's rejection of the opinion of a treating or examining physician, based in part on the testimony of a nontreating, nonexamining medical advisor.  See, e.g., Magallanes v. Bowen, 881 F.2d 747, 751-55 (9th Cir. 1989); Andrews v. Shalala, 53 F.3d 1035, 1043 (9th Cir. 1995); Roberts v. Shalala, 66 F.3d 179 (9th Cir. 1995).

In the present case, the ALJ "reluctantly relied" on the medical expert's opinion that plaintiff could work for no more than six hours a day beginning July 1, 2003. [AR at 471.]  The ALJ noted that the expert in reaching her conclusion relied on reports that the ALJ had previously discounted based on plaintiff's credibility and the lack of confirming tests, and as well as on the rejected medical opinion of Dr. De Beixedon.  However, as Dr. Bailey was "familiar with the entire record," he gave weight to her overall opinion concerning the disability onset date.  The ALJ is responsible for resolving conflicts in medical testimony, and resolving ambiguity.  See Andrews, 53 F.3d at 1041; Magallanes, 881 F.2d at 751, 755.  Determining whether inconsistencies are material (or are in fact inconsistencies at all) and whether certain factors are relevant to discount the opinions of treating physicians falls within this responsibility.  Morgan, 169 F.3d at 602-03.  The ALJ employed such an analysis in the 2012 Decision when evaluating the medical evidence, including that of Dr. De Beixedon.  [AR at 471.]  He also incorporated the 2004 Decision's analysis regarding plaintiff's credibility into the 2012 Decision.  Id.  Because this Court upheld both of these findings, and there is no other medical source or source of information that establishes an earlier disability onset date, the Court finds that substantial evidence supports the ALJ's conclusion regarding plaintiff's disability onset date.  Indeed, the ALJ's reliance on the medical expert, albeit reluctant, worked in favor of plaintiff.  The Court must affirm.  See Moncada v. Charter, 60 F.3d 521, 523 (9th Cir. 1995) ("We must affirm if we determine that substantial evidence supports the findings of the [ALJ] and that the ALJ applied the correct legal standards.").

## VI.

### CONCLUSION

**IT IS HEREBY ORDERED** that:  (1) plaintiff's request for reversal, or in the alternative, remand, is **denied**; and (2) the decision of the Commissioner is **affirmed**.

**IT IS FURTHER ORDERED** that the Clerk of the Court serve copies of this Order and the Judgment herein on all parties or their counsel.

**This Memorandum Opinion and Order is not intended for publication, nor is it intended to be included in or submitted to any online service such as Westlaw or Lexis.**

DATED: December 11, 2014

_____
PAUL L. ABRAMS
UNITED STATES MAGISTRATE JUDGE